Filed 7/29/99 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

1999 ND 147

Daniel P. Richter, Director of Ward 

County Social Service Board, and 

Crystal R. Houser, Plaintiffs and Appellees

v.

Scott David Houser, Defendant and Appellant

No. 980294

Appeal from the District Court of Ward County, Northwest Judicial District, the Honorable Gary A. Holum, Judge.

MODIFIED AND AFFIRMED.

Opinion of the Court by Maring, Justice.

Lee Armstrong, Assistant State’s Attorney, Regional Child Support Enforcement Unit, P.O. Box 2249, Minot, ND 58702-2249, for plaintiffs and appellees.

Debra K. Edwardson, Edwardson Law Office, Union Annex Building, Suite 303, 7A Central Ave. E., Minot, ND 58701, for defendant and appellant.

Richter v. Houser

No. 980294

Maring, Justice.

[¶1] 
Scott Houser appealed from a district court judgment ordering him to pay child support of $667 per month and arrearages of $8,789.  We hold the court correctly computed Houser’s support obligation under the child support guidelines but erred in failing to deduct past support paid by Houser of $300.  We modify the arrearage amount to $8,489 and, as amended, affirm the judgment.

[¶2] Scott and Crystal Houser are married and have two sons, Dameon, age 5, and Demrick, age 4.  Both parties reside in Minot, but they separated in March 1997.  The boys reside with Crystal, and she applied for and began receiving AFDC benefits  from the Ward County Social Service Board (Ward County) in March 1997.  Ward County took an assignment of Crystal’s support rights and, in April 1998, joined Crystal in bringing an action against Scott, requesting the court to establish an award of support for the boys, under N.D.C.C. § 14-08-01, and to order reimbursement by Scott, under N.D.C.C. § 14-08.1-01, of monies expended since March 1997 for the boys’ support.  After a hearing, the trial court entered judgment imposing a child support obligation of $667 per month and ordering payment of past due support.

I

[¶3] Scott Houser asserts the trial court improperly calculated his net income under the child support guidelines for purposes of establishing his child support obligation.  Child support determinations involve questions of law which are subject to a de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and, in some limited areas, may involve matters of discretion subject to the abuse of discretion standard of review.  
Buchholz v. Buchholz
, 1999 ND 36, ¶ 11, 590 N.W.2d 215.  A court errs as a matter of law when it fails to comply with the child support guidelines.  
Id.
  In making its child support determination, findings of fact by the trial court are overturned on appeal only if they are clearly erroneous.  
Rydberg v. Johnson
, 1998 ND 160, ¶ 6, 583 N.W.2d 631.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made.  
Id.

[¶4] N.D.C.C. § 14-09-09.7(3) creates a rebuttable presumption the amount of child support resulting from application of the child support guidelines established by the Department of Human Services is the correct amount of child support.  Under the guidelines, a court must first calculate an obligor’s gross income.  N.D. Admin. Code § 75-02-04.1-01(5).  The court must subtract allowable deductions from gross income, including tax obligations, health insurance premiums, FICA, and medicare obligations, to determine the obligor’s net income.  N.D. Admin. Code § 75-02-04.1-

01(7).  The obligor’s net income is then used to compute the support obligation.  N.D. Admin. Code § 75-02-04.1-10.

[¶5] Throughout the marriage Scott worked as a telecommunication cable construction lineman.  Although the parties now reside in Minot, and lived there in 1996 when Scott had a job laying cable in the community, his work required him to move to various localities in and out of the state, including Wisconsin, Wyoming, and Nebraska.  Scott earned about $40,000 in 1996.  In 1997 Scott worked five months, earning $17,000 and then collected $4,350 of unemployment compensation, for a total income of $21,350.  Scott then quit his job and became a part owner with his father in Houser Construction, Inc., a company formed to do the same type of telecommunication cable construction work.  Since then, Scott has not drawn a salary, but the company has paid for his food, lodging, and transportation expenses, totaling $700 per month.  Scott testified he could return  to work for another company, but he chooses to operate his own business so he can remain in the tri-state area and not have to work jobs in other locations across the country.

[¶6] The trial court found Scott is underemployed and imputed earnings to Scott under N.D. Admin. Code § 75-02-04.1-07.  To compute Scott’s support obligation, the trial court took 90% of Scott’s actual 1996 gross income, subtracted appropriate deductions,  and determined Scott has a net monthly imputed income of $2,341.92 which, under the guideline schedule, results in a support obligation of $667 per month for two children.  Scott argues the trial court misapplied the guidelines when it found he is underemployed and then imputed income to him based upon 90% of 1996 earnings.

[¶7] Under the guidelines, an obligor is underemployed if his “gross income from earnings is significantly less than prevailing amounts earned in the community by persons with similar work history and occupational qualifications.”  N.D. Admin. Code § 75-02-04.1-07(1)(b).  The guidelines define “community” as “any place within one hundred miles . . . of the obligor’s actual place of residence.”  N.D. Admin. Code § 75-02-04.1-07(1)(a).  A trial court has considerable discretion in determining whether an obligor meets the guideline definition of underemployed.  
Henry v. Henry
, 1998 ND 141, ¶ 15, 581 N.W.2d 921.  

[¶8] Scott asserts the trial court could not find he is underemployed, because there is no record evidence of the prevailing amounts earned by a cable lineman in the Minot community.  In 
Henry v. Henry
, 1998 ND 141, ¶ 18, 581 N.W.2d 921, a case in which a similar assertion was made, we stated “But, ‘[i]mplied in the guideline schedule and a parent’s duty to support their children is the assumption that an obligor with a demonstrated ability to earn income and support his children at a certain level will continue to do so unless he can establish legitimate reasons for a change.’”  (quoting 
Schatke v. Schatke
, 520 N.W.2d 833, 837 (N.D. 1994)).  Courts do not operate in a vacuum.  
Ohio Casualty Ins. Co. v. Clark
, 1998 ND 153, ¶ 8, 583 N.W.2d 377; 
see also
 
Nelson v. Nelson
, 1998 ND 176, ¶ 10, 584 N.W.2d 527.  The guidelines must be applied using common sense and in consideration of the circumstances.  It is undisputed that throughout the marriage Scott’s job as a cable lineman required him to work at job sites all across the country.  The Houser family may have maintained a home in Minot, but Scott’s job sites frequently changed.  Scott responded affirmatively when asked whether the income he received while employed as a lineman with other companies was a “fair representation of the type of earning potential that a lineman has.”  He also testified that a gross monthly income of $3,400 was representative of “the type of earning capacity”  he had  “prior to going into employment for [himself].”  

[¶9] Working for his own company, Scott’s earnings are “significantly less” than a person residing in the Minot community, with similar work history and occupational qualifications, could earn as a cable lineman working at job sites within and outside the community.  Scott’s career as a cable lineman historically required him to relocate to places where cable needed to be laid.  It is unrealistic, under these circumstances, to compute prevailing earnings in the community without looking at job sites beyond the 100 mile community radius.  The trial court’s application of the guideline was practical and justified.  We conclude the court’s finding Scott is underemployed is not clearly erroneous. 

[¶10] Having determined Scott was underemployed,  the trial court calculated Scott’s income based upon imputed earning capacity, in accordance with N.D.  Admin. Code § 75-02-04.1-07(3):

. Except as provided in subsections 4 and 5, monthly gross income based on earning capacity equal to the greatest of subdivisions a through c, less actual gross earnings, must be imputed to an obligor who is unemployed or underemployed.

. An amount equal to one hundred sixty-seven times the hourly federal minimum wage.

. An amount equal to six-tenths of prevailing gross monthly earnings in the community of persons with similar work history and occupational qualifications.

. An amount equal to ninety percent of the obligor’s greatest average gross monthly earnings, in any twelve months beginning on or after thirty-six months before commencement of the proceeding before the court, for which reliable evidence is provided.

Under subdivision (3)(c) the court imputed earnings to Scott in an amount equal to 90% of Scott’s 1996 gross income.  This was a proper application of this guideline, because Scott’s 1996 earnings were his highest annual earnings in the three-year period preceding commencement of the action. 

[¶11] Scott asserts that because employment as a cable lineman is not now available in Minot, N.D. Admin. Code § 75-02-04.1-07(6) prohibits the court from imputing income under subdivision (3)(c):

If an unemployed or underemployed obligor shows that employment opportunities, which would provide earnings at least equal to the lesser of the amounts determined under subdivision b or c of subsection 3, are unavailable in the community, income must be imputed based on earning capacity equal to the amount determined under subdivision a of subsection 3, less actual gross earnings.  

Scott’s unique occupation has required him to work outside the Minot community throughout most of the marriage.  Once again, the trial court  refused to apply the guidelines in a vacuum, but used common sense in finding Scott had failed to show appropriate employment opportunities were not available.  Where, as here, the obligor’s occupation during the marriage has required him to work at job sites outside the community, a proper application of the guideline is to consider what job opportunities are available to a person residing in the community, including those with job sites outside the community radius.  The trial court did just that.

[¶12] Our decision in 
Edwards v. Edwards
, 1997 ND 94, ¶ 7, 563 N.W.2d 394 is factually similar and is relevant to this issue.  In 
Edwards
 the obligor had been employed as a salaried machinist in a business manufacturing and selling bullet casting machines, and earned an annual salary of $18,000.  When he purchased the business and became self-employed he realized no earnings or profit from the business.  This Court held “income compatible with an obligor’s prior earning history may be imputed in calculating the child support obligation,” 
id.
 and concluded Edwards’ $18,000 annual salary as a machinist employee of the business should be imputed as income to him because” it is, under these circumstances, the best current predictor of Edwards’ expected income from the business.”  
Id.

[¶13] Scott testified his income as an employee cable lineman was a fair representation of his earning potential even though his income has dropped substantially as an operator of his own company.  Scott’s income as a cable lineman is, under the circumstances, the best predictor of his earning capacity, and we find no error by the trial court in imputing income to Scott under N.D. Admin. Code § 75-02-

04.1-07, as an underemployed obligor.    

II

[¶14] Scott claims the trial court erred in requiring him to pay retroactive support from March 1997, when he and Crystal separated.  He relies upon N.D.C.C. § 14-09-

14, which states:

A parent is not bound to compensate the other parent or a relative for the voluntary support of the parent’s child without an agreement for compensation . . . .

[¶15] Other statutes are relevant to this issue.  Both parents have a mutual duty to support their children.  N.D.C.C. § 14-09-08; 
Olson v. Olson
, 1998 ND 190, ¶ 8, 585 N.W.2d 134.  Under N.D.C.C. § 14-08-01 “[a]ny married person may maintain an action . . . against his or her spouse for failure on the spouse’s part to provide for . . . support of minor children by said husband or wife living with the party bringing suit.”  Also, N.D.C.C. § 14-08.1-01 provides “[a] person legally responsible for the support of a child . . . is liable for the reasonable value of  physical and custodial care or support which has been furnished to the child by any person . . . .”  When statutes cover the same subject matter, we make every effort to harmonize and give meaningful effect to each statute without rendering one or the other largely useless.  
Zueger v. N.D. Workers Comp. Bur.
, 1988 ND 175, ¶ 12, 584 N.W.2d 530.  

[¶16] Scott’s interpretation of N.D.C.C. § 14-09-14 is much too broad.    That statute is not a bar to the court awarding past support.  
See
 
Rydberg v. Johnson
, 1998 ND 160, ¶ 11, 583 N.W.2d 631.  Under the clear terms of the statute, a parent has no legal obligation to compensate the other parent’s  “voluntary support” of a child, in the absence of an agreement.  
See
 
Flugel v. Henschel
, 69 N.W. 195, 196 (N.D. 1896).  The statute does not, however, prohibit one parent from enforcing the other parent’s legal duty to provide support for their child.  It does not prohibit the parent from collecting, on the child’s behalf, support money the other parent has a legal obligation to provide for the child.    

[¶17] Construing N.D.C.C. §§ 14-08-01, 14-08.1-01, and 14-09-14 together, we conclude the district court has authority to award past due child support.  
See
 
Linrud v. Linrud
, 552 N.W.2d 342, 347 (N.D. 1996); 
see also
 N.D.C.C. § 14-17-14(4) (“[t]he court may limit the father’s liability for past support of the child to the proportion of the expenses already incurred that the court deems just”).  N.D.C.C. § 14-09-14 does not bar a parent’s claim for child support which is based upon the defendant parent’s legal duty to provide support.  The statute merely forecloses a claim for reimbursement, without prior agreement, for the plaintiff parent’s voluntary expenditures on behalf of the child.  The trial court’s decision whether to award past child support is discretionary and will not be overturned on appeal unless the court has abused its discretion.  
See
 
Rydberg v. Johnson
, 1998 ND 160, ¶ 12, 583 N.W.2d 631.  We conclude the court did not abuse its discretion in awarding past child support in this case.
(footnote: 1)
[¶18] Using Scott’s actual 1997 earnings and his expected 1998 earnings through July of that year, the trial court determined Scott owes past due support of $8,789.  We conclude that although the trial court’s calculation of past due child support was not in error, the record evidence is undisputed Scott paid $300 to Crystal for the boys’ support prior to these proceedings.  Consequently, the court erred in failing to deduct that amount from the past due support.  Subtracting $300 from the support arrearages results in a total of $8,489 past due support.  

III

[¶19] Scott asserts the trial court erred in ordering reimbursement to Ward County for AFDC payments made to Crystal, without evidence of the amount of AFDC benefits paid.  Scott’s argument on this issue rests primarily upon his assertion that N.D.C.C. § 14-09-14 prohibits the court from awarding past due child support.  We have rejected that argument.  

[¶20] By statute, state agencies providing AFDC benefits have the right to be reimbursed for that assistance from persons who have support obligations to those receiving the assistance.  N.D.C.C. § 50-09-06;
(footnote: 0) 
Mehl v. Mehl
, 545 N.W.2d 777, 779 (N.D. 1996).  Ward County, as an agency with a statutory right of reimbursement for  benefits paid, and Crystal, as the custodial parent of the children, were properly asserting the children’s support rights in this action.  
See
 
Sprynczynatyk v. Celley
, 486 N.W.2d 230, 232 (N.D. 1992).   [¶21] This lawsuit was brought jointly by Ward County and Crystal on the children’s behalf.  The trial court’s child support arrearages award is based upon Scott’s legal obligation of support due the boys, as computed under the child support guidelines, and is not based upon the amount of AFDC payments paid to Crystal on behalf of the children.  We find no error by the trial court.  

IV

[¶22] Scott asserts the trial court erred in not requiring Crystal to also reimburse Ward County for benefits paid in support of the children.  Scott’s position on this issue demonstrates a misunderstanding of the basis underlying his support obligation under the child support guidelines.  Calculation of child support obligations under the guidelines “consider and assume that one parent acts as a primary caregiver and the other parent contributes a payment of child support to the child’s care.”  N.D. Admin. Code § 75-02-04.1-02(1).  Although parents have a mutual duty to support their children, the child support guidelines contemplate child support payments be made by the noncustodial parent to the custodial parent.  
Dalin v. Dalin
, 545 N.W.2d 785, 789 (N.D. 1996).  The guidelines recognize the obligee parent, as custodial parent, makes “a substantial monetary and nonmonetary contribution to the child’s basic care and needs by virtue of being a custodial parent.”  N.D. Admin. Code § 75-02-04.1-

09(1)(b); 
Perala v. Carlson
, 520 N.W.2d 839, 842 (N.D. 1994).  Under this judgment, Scott is asked to do no more, but no less, than contribute his fair monetary share, as computed under the guidelines, toward support of his children.  We conclude this issue is without merit.  

¶23] The award of past support is reduced to $8,489, and, as amended, the judgment is affirmed.

[¶24] MODIFIED AND AFFIRMED.

[¶25] Mary Muehlen Maring

William A. Neumann

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

FOOTNOTES
1:    
Scott has not raised a statute of limitations or laches issue, and we, therefore, make no determination about the applicability of those doctrines to awards of past child support under these circumstances.

0:     
This statute provides, in relevant part:

. . .  An application for assistance under this chapter is deemed to create and effect an assignment of all rights of support, which exist or may come to exist for the benefit of the child, to the state agency and county agency.  The assignment:

. Is effective as to both current and accrued child support obligations.

. Takes effect upon a determination of eligibility for assistance under this chapter.

. Terminates when an applicant ceases to receive assistance under this chapter, except with respect to the amount of any unpaid support obligation accrued under the assignment.