2001 ND 74

**Cheryl Marie MINAR, Plaintiff and Appellee,**

v.

**Dean Leslie MINAR, Defendant and Appellant.**

**No. 2000179.**

Supreme Court of North Dakota.

April 17, 2001.

Leslie Bakken Oliver, Vogel Law Firm, Bismarck, ND, for plaintiff and appellee.

Chad C. Nodland, Chad C. Nodland, P.C., Bismarck, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Dean Leslie Minar appealed the second amended judgment of divorce, challenging the district court's denial of his motion to reduce child support payments. The district court temporarily suspended part of Dean's child support payment while he pursues his education full time, instead of decreasing the child support obligation. Dean also challenges the district court's order establishing June 2001 as the date for reinstatement of the full child support payments plus the additional monthly payment of $250 of accrued arrearage and the health insurance obligation. We affirm the temporary suspension of part of the

child support payment and reverse the determination of the child support amount and health insurance obligation. We remand for the determination of Dean's child support obligation in accordance with N.D. Admin. Code § 75–02–04.1–07(3)(c) and for the determination of health insurance obligation for minor children in accordance with N.D.C.C. § 14–09–08.10. We remand for reconsideration of the date of reinstatement of both the full payment of child support and the additional payment of arrearage.

I

[¶ 2] Dean and Cheryl Minar were divorced in 1992. Cheryl was awarded custody of their three children and Dean was ordered to pay $350 per month in child support. Dean's child support obligation was increased to $758 per month in 1994. In October 1997, Dean's child support obligation was changed to $751 per month for the two remaining minor children. Dean has maintained health insurance coverage for the minor children since the divorce.

[¶ 3] Dean was employed as a drafter for Melroe Ingersoll Rand, Inc. ("Melroe"). On September 1, 1998, Melroe terminated Dean's employment because they sold the division in which Dean worked. Prior to his termination, Dean earned $18.72 per hour working as a drafter.

[¶ 4] Dean started taking classes toward a degree in engineering while working for Melroe. Once he was laid off, Dean tried to find similar employment. He located three positions for drafters, in Bismarck, Dickinson, and Jamestown. Dean determined these employment opportunities were minimal because they required either additional training for new computer programs or relocation more than 100 miles from his present residence. Dean did not apply for any of these positions; rather, Dean enrolled full time at Bismarck State College. His plans are to finish his associate degree at Bismarck State College and enroll at a four-year university in another city to obtain a bachelor's degree in mechanical engineering. His projected graduation date is the spring of 2002.

[¶ 5] Dean continued to pay his child support obligation until December 1, 1999, by utilizing money from the severance package he received from Melroe and selling some personal property. Dean filed a motion to modify his child support obligation on December 1, 1999. A hearing was held on March 16, 2000.

[¶ 6] The trial court found Dean's gross monthly income at Melroe was $3,185 and his net monthly income was $2,569.62, resulting in a support obligation of $751 for the support of his two children. These numbers are identical to the 1996 income used as the basis for calculating the child support obligation for the previous amended judgment in October 1997. The trial court also found Dean's earning capacity was $2,569 "by virtue of his previous employment" and his present employment status "is a result of his election to pursue his education so as to enhance his earning capacity." The trial court also stated Dean's present employment status was in part determined by involuntary termination and that he could secure continued employment as a drafter even though it may necessitate relocation. Although these last two statements in the order were not labeled as findings of fact, "we will recognize and consider findings of fact regardless of the label that may be placed upon them." *Rummel v. Rummel*, 265 N.W.2d 230, 234 (N.D.1978).

[¶ 7] The trial court did not reduce Dean's child support obligation but suspended part of the payment while he is attending school. The trial court ordered Dean to pay $161 per month, an amount

based on a full-time minimum wage employment. The remaining $590 per month is to continue to accrue in arrears on a monthly basis, payable at the rate of $250 per month starting June 15, 2001, in addition to the regular child support payment.

[¶ 8] Finding health insurance coverage for the minor children was available through Cheryl's employment at a "reasonable or nominal cost," the trial court ordered Cheryl to furnish health insurance coverage for the minor children through May 2001.

[¶ 9] The trial court ordered the reinstatement of the child support and health insurance "in its entirety effective with the month of June, 2001, or the first full month subsequent to the defendant's termination or withdrawal from his formal education program."

## II

[¶ 10] Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215. A court errs as a matter of law when it fails to comply with the requirements of the child support guidelines in determining an obligor's child support obligation. *Lauer v. Lauer*, 2000 ND 82, ¶ 3, 609 N.W.2d 450. As a matter of law, the trial court must clearly set forth how it arrived at the amount of income and level of support. *Id.* The trial court's findings of fact in making its child support determination are overturned on appeal only if they are clearly erroneous. *Richter v. Houser*, 1999 ND 147, ¶ 3, 598 N.W.2d 193. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if

no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made. *Id.* Findings are adequate if we can understand from them the factual basis for the court's determination. *Jarvis v. Jarvis*, 1998 ND 163, ¶ 29, 584 N.W.2d 84.

[¶ 11] Under the child support guidelines, an obligor's ability to pay child support is not determined solely upon actual income, but also takes into account the obligor's earning capacity. *Buchholz*, 1999 ND 36, ¶ 13, 590 N.W.2d 215. The trial court's findings under the imputed income provisions of the child support guidelines must be clear, and we must be able to understand from the record how the court arrived at the amount of income and level of support. *Lauer*, 2000 ND 82, ¶ 9, 609 N.W.2d 450. The trial court made no finding that Dean was underemployed or unemployed, but instead found Dean had an earning capacity of a net monthly income of $2,569 "by virtue of his previous employment." On that basis, the trial court continued the child support obligation at the same amount of $751 established in the previous amended judgment in October of 1997.

[¶ 12] Dean concedes he is unemployed. Section 75–02–04.1–07(3) of the North Dakota Administrative Code states income must be imputed to an obligor who is unemployed and describes how to impute income based on earning capacity.

3. Except as provided in subsections 4, 5, and 9, monthly gross income based on earning capacity equal to the greatest of subdivisions a through c, less actual gross earnings, must be imputed to an obligor who is unemployed or underemployed.

a. An amount equal to one hundred sixty-seven times the hourly federal minimum wage.

b. An amount equal to six-tenths of prevailing gross monthly earnings in the community of persons with similar work history and occupational qualifications.

c. An amount equal to ninety percent of the obligor's greatest average gross monthly earnings, in any twelve consecutive months beginning on or after thirty-six months before commencement of the proceeding before the court, for which reliable evidence is provided.

[¶ 13] The trial court erred by continuing the existing child support obligation established in October of 1997. At that time, Dean was employed at Melroe so the court looked at his income for 1996 and established the $751 per month obligation. Now, Dean is unemployed so income must be imputed using the greatest of N.D. Admin. Code § 75–02–04.1–07(3)(a), (b), or (c).

[¶ 14] Section 75–02–04.1–07(3)(a), N.D. Admin. Code is based on the federal minimum wage of $5.15 per hour times 167 hours per month, or $860.00 per month. Section 75–02–04.1–07(3)(b), N.D. Admin. Code is based on six-tenths of the "prevailing gross monthly earnings in the community of persons with similar work history and occupational qualifications." In his proposed child support computation, Dean used an hourly wage of $8.98 for drafters in west central North Dakota from Job Service of North Dakota's North Dakota Occupational Wages 1996–97, p. 48, to estimate the hourly wage of persons in the community with similar job qualifications. Multiplying $8.98 per hour by an estimated 167 hours of work per month results in a gross monthly wage of $1,499.66. Six-

tenths of $1,499.66 is $899.80, the estimated gross monthly wage amount under N.D. Admin. Code § 75–02–04.1–07(3)(b).

[¶ 15] The evidence in the record is not adequate to determine Dean's "greatest average gross monthly earnings, in any twelve consecutive months beginning on or after thirty-six months before commencement of the proceeding before the court" as required by N.D. Admin. Code § 75–02–04.1–07(3)(c). However, when Dean's employment at Melroe was terminated he was earning $18.72 per hour, which equates to $3,126.24 per month by multiplying $18.72 per hour by 167 hours per month. Ninety percent of $3,126.24 is $2,813.62. Even if the greatest average gross monthly earnings in any twelve months within the last thirty-six months is somewhat different than the amount based on $18.72 per hour, it is likely N.D. Admin. Code § 75–02–04.1–07(3)(c) will result in an income that is the "greatest of subdivisions a through c." Therefore, N.D. Admin. Code § 75–02–04.1–07(3)(c) appears to be the correct calculation to use to impute child support obligation based on earning capacity.

[¶ 16] We direct the court to recalculate the child support obligation on the basis of N.D. Admin. Code § 75–02–04.1–07(3)(c), after obtaining complete information for income for the thirty-six months prior to December 1, 1999, in order to determine the greatest average monthly earnings, in any twelve consecutive months beginning on or after thirty-six months before commencement of the proceeding before the court.

[¶ 17] Dean argues the exception to N.D. Admin. Code § 75–02–04.1–07(3) as provided by N.D. Admin. Code § 75–02–04.1–07(6) applies to his situation because there are no job opportunities in the community for someone with his training.

Section 75–02–04.1–07(6), N.D. Admin. Code requires the use of the minimum wage amount instead of the amounts of N.D. Admin. Code § 75–02–04.1–07(3)(b) or (c) under certain circumstances of job unavailability.

    6.  If an unemployed or underemployed obligor shows that employment opportunities, which would provide earnings at least equal to the lesser of the amounts determined under subdivision b or c of subsection 3, are unavailable in the community, income must be imputed based on earning capacity equal to the amount determined under subdivision a of subsection 3, less actual gross earnings.

[¶ 18] The income of a drafter as calculated under N.D. Admin. Code § 75–02–04.1–07(3)(b) appears to be the "lesser of the amounts determined under subdivision b or c of subsection 3." Dean claims the job openings for drafters in Bismarck, Jamestown, and Dickinson require job background, training, and skills in two computer programs which Dean lacks. Additionally, Dean argues "community" is defined as "any place within one hundred miles [160.93 kilometers] of the obligor's actual place of residence" according to N.D. Admin. Code § 75–02–04.1–07(1)(a), and because Jamestown and Dickinson are over 100 miles from his residence, they are not available within his community.

[¶ 19] The trial court found Dean had located three positions although they required either additional training for new computer programs, or required the defendant to relocate more than 100 miles from his present residence. The trial court therefore found "[b]ecause the defendant determined such employment opportunities to be minimal, defendant has now enrolled at Bismarck State College as a full-time student seeking to continue his education towards a Bachelor's Degree in Engineering." The trial court did not specifically find employment opportunities were unavailable in the community; it only recognized this as the reason for Dean's decision to not work and go back to school full time. The trial court does specifically find Dean's present employment status "is a result of his election to pursue his education so as to enhance his earning capacity." The trial court also states while Dean's "employment status has in part been determined by the involuntary termination," Dean "could secure continued employment as a drafter."

[¶ 20] Courts do not operate in a vacuum. *Richter v. Houser*, 1999 ND 147, ¶ 8, 598 N.W.2d 193. The guidelines must be applied using common sense and in consideration of the circumstances. *Id.* Dean claims there are no job opportunities in the community for someone with his training, because the jobs in Bismarck, Jamestown, and Dickinson require some additional computer training and his residence is 101.5 miles from the Jamestown job. Dean did not apply for any of the jobs he located. In *Richter*, we determined because the obligor's career as a cable lineman historically required him to relocate to places where cable needed to be laid, it was unrealistic to not look at job sites beyond the 100 mile community radius. 1999 ND 147, ¶ 11, 598 N.W.2d 193. Here Dean's job with Melroe did not require relocation but he testified he plans to travel to the university in Grand Forks, Fargo, or to a school out of state to complete his bachelor's degree. It is not clearly erroneous to find Dean could secure continued employment as a drafter within the community. The exception to N.D. Admin. Code § 75–02–04.1–07(3)(c) provided by N.D. Admin. Code 75–02–04.1–07(6) does not apply.

[¶ 21] Cheryl argues the trial court properly utilized the income-imputing formula set forth in N.D. Admin. Code § 75–02–04.1–07(9) which provides for the imputation of earnings without a showing the obligor is unemployed or underemployed.

Notwithstanding subsections 4, 5, and 6, if an obligor makes a voluntary change in employment resulting in reduction of income, monthly gross income equal to one hundred percent of the obligor's greatest average monthly earnings, in any twelve consecutive months beginning on or after thirty-six months before commencement of the proceeding before the court, for which reliable evidence is provided, less actual monthly gross earnings, may be imputed without a showing that the obligor is unemployed or underemployed.

[¶ 22] Because the trial court found Dean elected to pursue his education, Cheryl argues Dean made a voluntary change in employment. However, the trial court did not specifically find Dean had voluntarily changed his employment and acknowledges Dean's employment status was determined in part by his involuntary termination.

[¶ 23] Section 75–02–04.1–07(9) of the N.D. Admin. Code became effective August 1, 1999 to permit imputation of one hundred percent of former income without requiring a finding the obligor is unemployed or underemployed if the obligor left the position voluntarily.

It has long been the practice in North Dakota to not allow for a reduction in a child support obligation based upon the obligor's voluntary change of employment. However, in *Nelson v. Nelson*, 547 N.W.2d 741 (N.D.1996), the North Dakota Supreme Court held that the child support guidelines had the effect of terminating that practice. Because the department had not intended that out-come, this subsection was added to permit the long-standing North Dakota practice to resume. The only change is that voluntary changes in employment could affect a child support determination for no longer than 36 months after the change took place.

Summary of Comments Received in Regard to Proposed Amendments to N.D. Admin. Code ch. 75–02–04.1, Child Support Guidelines, p. 36 (June 14, 1999) (prepared by Blaine L. Nordwall). *See Nelson v. Nelson*, 547 N.W.2d 741, 748 (N.D.1996) (VandeWalle, C.J., concurring in result).

[¶ 24] Section 75–02–04.1–07(9), N.D. Admin. Code is permissive, providing the court "may" impute income when an obligor has reduced his income. *Logan v. Bush*, 2000 ND 203, ¶ 14, 621 N.W.2d 314. "When a court *may* do something, it is not mandatory but is generally a matter within the court's discretion." *Id.* Section 75–02–04.1–07(9), N.D. Admin. Code gives the trial court the discretion to impute one hundred percent of the former income without needing to show the obligor is unemployed or underemployed if the obligor voluntarily left his job for a lower paying job. Therefore, N.D. Admin. Code § 75–02–04.1–07(9) allows imputation where it otherwise would not be allowed. However, Dean concedes he is unemployed. Section 75–02–04.1–07(3), N.D. Admin. Code unambiguously requires imputation of earnings of an obligor who is unemployed so N.D. Admin. Code § 75–02–04.1–07(9) is not applicable to Dean's situation.

[¶ 25] We remand for determination of Dean's child support obligation based on N.D. Admin. Code § 75–02–04.1–07(3)(c), if applicable, as it appears to be from the evidence on record.

III

[¶ 26] Dean argues the trial court erred by reinstating his obligation to

pay for health insurance in June 2001 or the first full month subsequent to Dean's termination or withdrawal from school.

[¶ 27] According to N.D.C.C. § 14–09–08.10, every child support order entered in this state must address health insurance coverage for the child:

Each order entered under this code for the support of a minor child or the support of a child after majority under section 14–09–08.2 must include a provision for health insurance coverage for that child.

1. Except as provided in subsection 2, the order must require the obligor to provide satisfactory health insurance coverage whenever that coverage is available at reasonable cost or becomes available at reasonable cost.

2. If the obligee is an individual with physical custody of the child, the obligee must be required to provide satisfactory health insurance whenever that coverage is available at no or nominal cost.

[¶ 28] We recently explained in *Berg v. Berg*, 2000 ND 36, ¶ 13, 606 N.W.2d 895, this statute essentially creates a three-step process for determining who is responsible for health insurance coverage of the children.

First, the custodial parent must be ordered to secure coverage if it is "available at no or nominal cost." N.D.C.C. § 14–09–08.10(2). If not, N.D.C.C. § 14–09–08.10(1) requires the noncustodial parent to provide coverage if it is "available at reasonable cost or becomes available at reasonable cost." If neither subsection is applicable, the trial court has discretion to make other provisions for the child's health insurance or health care costs.

[¶ 29] The trial court did not find Cheryl was able to provide the health insurance at no or nominal cost but rather found a "nominal or reasonable" cost.[1] The only evidence of Cheryl's cost of health insurance is a statement by Dean in his affidavit claiming Cheryl told him on October 28, 1999, she was eligible for "reasonable cost" premiums for the children's health insurance. There is no evidence of Cheryl's actual cost to provide health insurance for the children.

[¶ 30] We remand for determination of the cost for Cheryl to pay for the children's health insurance. If the cost is deemed "no or nominal," Cheryl, as the obligee with physical custody of the children, must be required to provide satisfactory health insurance. N.D.C.C. § 14–09–08.10(2). This requirement continues as long as the insurance is available to Cheryl at no or nominal cost. *Id.*

[¶ 31] If Cheryl's insurance cost is not "no or nominal," N.D.C.C. § 14–09–08.10(1) requires the obligor, Dean, to pay for health insurance if it is available at a reasonable cost or becomes available at a reasonable cost. Reasonable cost has been defined as insurance "available to the obligor on a group basis or through an employer or union, regardless of service delivery mechanism." *Berg*, 2000 ND 36, ¶ 15, 606 N.W.2d 895. Dean testified he was currently paying for health insurance for his children at the cost of twenty-three dollars per month. Because Dean is unemployed, he is not able to pay for the health insurance on a group basis or through his employer while going to school. Therefore the court is not required to order Dean to pay for the health

1. The order granting motion for second amended judgment described Cheryl's cost of health insurance as "reasonable or nominal." The judgment used the term "reasonable and nominal." We assume the use of "and" instead of "or" in the judgment is a typographical error.

insurance, until it becomes available again at a "reasonable" cost.

[¶ 32] However, if neither N.D.C.C. § 14–09–08.10(1) or (2) apply, the court has the discretion to make other provisions for the children's health insurance or health care costs. *Berg,* 2000 ND 36, ¶ 13, 606 N.W.2d 895. In that situation, ordering Cheryl to pay for the health insurance while Dean is in school is in accordance with the statute. Once insurance becomes available to Dean at a reasonable cost, under N.D.C.C. § 14–09–08.10(1) he is required to pay for the health insurance of the minor children.

[¶ 33] We remand for determination of the obligation to pay for health insurance of the minor children in accordance with N.D.C.C. § 14–09–08.10.

## IV

[¶ 34] Dean argues the trial court clearly erred by reinstating the full child support payment in June 2001 because his anticipated graduation date is the spring of 2002.

[¶ 35] The trial court suspended $590 of the entire $751 child support obligation from December 1999 through May 2001, but the $590 is to accrue in arrears. Starting June 15, 2001, the trial court ordered the arrearage paid at the rate of $250 per month, in addition to the regular child support payment. The trial court also ordered payment of child support and health insurance that was temporarily suspended be "reinstated in its entirety effective with the month of June, 2001, or the first full month subsequent to the defendant's termination or withdrawal from his formal education program."

[¶ 36] We have previously approved temporary suspension of the child support payments while the obligor attended school. *Henry v. Henry,* 1998 ND 141,

¶ 25, 581 N.W.2d 921. It is appropriate to delay paying a portion of the support when the obligor's income is temporarily reduced. *Id.* at ¶ 24.

[¶ 37] No evidence in the record supports reinstatement of the suspension or payment of the arrearage in June 2001. The temporary inability of Dean to pay the full child support amount because of his status as a full-time student is expected to continue through May 2002. It is unclear to us what the trial court intends by ordering the child support payment "reinstated in its entirety effective with the month of June, 2001, or the first full month subsequent to the defendant's termination or withdrawal from his formal education program." It can be interpreted to extend the date of reinstatement to the date of graduation if later than June 2001, or it could be read to establish June 2001 as the latest date of reinstatement, but provide for earlier reinstatement of the full payment if Dean discontinues his full-time education before June 2001. We affirm the suspension but remand for reconsideration of the timing of the reinstatement of the child support payments and the additional payment of arrearage.

[¶ 38] We affirm in part, reverse in part, and remand for determination and reconsideration in accordance with this opinion.

[¶ 39] SANDSTROM and NEUMANN, JJ., concur.

[¶ 40] HODNY, S.J., sitting in place of KAPSNER, J., disqualified.

MARING, Justice, concurring in part and dissenting in part.

[¶ 41] I concur in the majority opinion except as to Part II, which concludes N.D. Admin. Code § 75–02–04.1–07(9) is not applicable to Dean's situation.

[¶ 42] N.D. Admin. Code § 75–02–04.1–07(9) provides:

Notwithstanding subsections 4, 5, and 6, if an obligor makes a voluntary change in employment resulting in reduction of income, monthly gross income equal to one hundred percent of the obligor's greatest average monthly earnings, in any twelve consecutive months beginning on or after thirty-six months before commencement of the proceeding before the court, for which reliable evidence is provided, less actual monthly gross earnings, may be imputed without a showing that the obligor is unemployed or underemployed.

Dean conceded he is unemployed. The trial court found "that [Dean's] present employment status, is a result of his election to pursue his education so as to enhance his earning capacity." The trial court also found Dean "would have the capacity for minimum wage employment in addition to his student responsibilities" and Dean "could secure continued employment as a drafter even though such continued employment may necessitate a relocation by [Dean]." The trial court concluded Dean was liable for child support based on the imputation of one hundred percent of his former income which is justified under § 75–02–04.1–07(9) of the North Dakota Administrative Code.

[¶ 43] The majority opinion concludes subsection 9 is not applicable to Dean's situation because Dean concedes he is unemployed and subsection 3 of § 75–02–04.1–07, N.D. Admin. Code, "requires imputation of earnings of an obligor who is unemployed."

[¶ 44] The majority fails to recognize that subsection 3 of § 75–02–04.1–07 requires imputation of earnings of an obligor "who is unemployed *or underemployed.*" (Emphasis added.) Subsection 9 of § 75–02–04.1–07 permits imputation "without a showing that the obligor is unemployed or underemployed" when "an obligor makes a voluntary change in employment resulting in reduction of income." The trial court did not need to make a finding whether Dean was unemployed or underemployed. It does not matter. The trial court only needed to determine whether Dean made "a voluntary change in employment," which reduced his income. The history of § 75–02–04.1–07(9), N.D. Admin. Code, indicates the intent was to make it clear that the trial court has discretion to inquire into the reason for the change in employment status when applying the child support guidelines. Summary of Comments Received in Regard to Proposed Amendments to N.D. Admin. Code ch. 75–02–04.1, Child Support Guidelines, p. 36 (June 14, 1999) (prepared by Blaine L. Nordwall).

[¶ 45] Although Dean initially was unemployed involuntarily due to his termination, the evidence in the record supports the trial court's finding that Dean voluntarily chose to remain unemployed when he was employable and employment was available. When Dean made "his election" to go to college and remain unemployed, he made "a voluntary change in employment" under subsection 9 of § 75–02–04.1–07. To interpret subsection 9 of § 75–02–04.1–07, N.D. Admin. Code, to apply only to obligors who voluntarily become underemployed means an obligor who is involuntarily terminated from a job and then chooses to remain unemployed in order to go back to school will pay less support than the obligor who works albeit at a lower paying job. This provides a big incentive to all obligors, who in the future find themselves laid off to remain unemployed and to go to school. These obligors will have child support imputed at the most at ninety percent of their greatest average monthly earnings under subsection 3 of § 75–02–04.1–07, N.D. Admin. Code, whereas the obligor who voluntarily takes a lower paying job will have child

support imputed at one hundred percent of their greatest average monthly earnings under subsection 9 of § 75–02–04.1–07, N.D. Admin. Code. In addition, these obligors who are laid off and go to college may get their child support suspended while they are in school and may be able to avoid paying for health insurance for their children. *See Henry v. Henry*, 1998 ND 141, 581 N.W.2d 921. By the time Dean is finished with his college degree in May 2002, Jaden will be four months from his 18th birthday and Janea will be three months from her 14th birthday. Janea is the only child that may share in any increased earning capacity Dean achieves.

[¶ 46] Our Court has said, "A parent has a duty to support her children to the best of her abilities, not simply to her inclinations. (Citations omitted.) The guidelines represent an effort to balance an obligor's freedom to make employment decisions with the duty to diligently and fully support her children." (Citations omitted.) *Logan v. Bush*, 2000 ND 203, ¶ 15, 621 N.W.2d 314. If the result of the change in employment status is a decrease in income, the obligor who made the choice should make a greater sacrifice than his children. *Id.* "Section 75–02–04.1–07(9), N.D. Admin. Code, embodies these principles." *Id.*

[¶ 47] I am of the opinion N.D. Admin. Code § 75–02–04.1–07(9) is applicable to Dean's situation and would remand in order for the trial court to determine the greatest average monthly earnings in any twelve consecutive months beginning on or after the thirty-six months before commencement of the proceedings before the court.

[¶ 48] HODNY, S.J., concurs.