Patty A. ZACHER, Plaintiff and Appellant,

v.

Mylene ZACHER, Defendant and Appellee.

Civ. No. 920123CA.

Court of Appeals of North Dakota.

Dec. 17, 1992.

C. Charles Chinquist (argued), Fargo, for plaintiff and appellant.

Nodland & Dickson, Bismarck, for defendant and appellee; argued by Irvin B. Nodland.

PER CURIAM.

Patty Zacher appeals from the property division and child support award of a district court judgment granting Patty a divorce from her husband, Mylene Zacher. We affirm the property division, reverse the child support award, and remand for a redetermination of child support.

Patty and Mylene were married for 24 years. During the marriage they resided in Strasburg and operated a farm in Emmons County. Patty and Mylene had five children during the marriage. Three of their children are adults, but the two younger children, Vicki, born September 6, 1985, and Anthony, born February 8, 1987, reside in the marital home. The district court granted Patty a divorce and awarded her custody of Vicki and Anthony, with reasonable visitation for Mylene.

■ On appeal, Patty asserts that the district court's property division and child support awards are clearly erroneous. A trial court's determinations concerning property division and child support will not be set aside on appeal unless they are clearly erroneous under Rule 52(a), N.D.R.Civ.P. *Younger v. Bryant,* 465 N.W.2d 155 (N.D.1991). A determination is not clearly erroneous unless the appellate court is left with a firm and definite conviction that a mistake has been made. *Erickson v. Erickson,* 384 N.W.2d 659 (N.D. 1986).

The district court determined that the parties had a net marital estate of $313,-594.77. Generally, the court awarded the farming operation to Mylene and awarded to Patty the marital home and its contents plus a cash adjustment of $40,000 "payable annually over 10 years at 8 percent interest." The court made Mylene responsible for $211,640.23 of the marital debt and gave Patty responsibility for $6,340.50 of the marital debt. The court valued Patty's share of the net marital estate at $120,-670.50 and Mylene's share at $192,924.27. Patty asserts that the property division is clearly erroneous, because her share equals only about 38.5 percent of the net marital estate. She contends that she should have received about one-half of the estate. Patty also contends that the court should have awarded her an immediate cash payment of $15,000 and a total cash adjustment of $70,-000. Patty also asserts that the district court placed undue emphasis on her conduct in making the property division.

■ The court's objective in dividing marital property is to make an equitable distribution to the parties, but the division need not be equal to be considered an equitable distribution. *Freed v. Freed,* 454 N.W.2d 516 (N.D.1990). It is well settled that both economic and noneconomic fault are relevant factors that the court may consider in dividing marital property. *Erickson, supra,* 384 N.W.2d at 661. *Halvorson v. Halvorson,* 482 N.W.2d 869 (N.D. 1992).

■ The district court concluded that there was "recurring infidelity" by Patty during the marriage and that her denial on the witness stand of marital infidelity was not believable. The court expressly concluded in its memorandum opinion that Pat-

ty's infidelity was a principle cause of the failure of the marriage and that her conduct justified a less than equal property division. The trial court's determination of fault is a finding of fact that will not be set aside unless it is clearly erroneous. *Halvorson, supra,* 482 N.W.2d at 871. There is substantial evidence in the record to support the court's finding regarding Patty's infidelity, and we conclude that it is not clearly erroneous.

The court stated that several factors, in addition to fault, influenced its property division. The court specifically noted that both parties have contributed to the accumulation of the marital estate. We are not convinced that the district court placed "undue emphasis" on Patty's conduct for purposes of dividing the marital property. Patty received a substantial property award valued at more than $120,000. Also, the court awarded her custody of the minor children, which reflects that the district court was impartial and did not place undue emphasis on Patty's marital infidelity for purposes of deciding the issues. The court explained that it did not award Patty an immediate cash payment because she was employed and has a stable income. In lieu of immediate cash, the court awarded Patty eight percent interest on the cash installments over the ten-year period. Having reviewed the record, this court is not left with a firm and definite conviction that the district court made a mistake in dividing the marital property. We conclude, therefore, that the property division is not clearly erroneous.

Patty also asserts on appeal that the trial court's child support award is clearly erroneous. She contends that the court did not compute the amount of child support in accordance with the child support guidelines. We agree that the district court's child support award is clearly erroneous, because the court did not follow the statutory requirements for applying the child support guidelines.

In *Montgomery v. Montgomery,* 481 N.W.2d 234, 235 (N.D.1992), Justice VandeWalle summarized the statutory requirement for applying the child support guidelines in making a child support award:

"Section 14–09–09.7(1), NDCC, authorizes the Department of Human Services to promulgate child support guidelines and subsection three of that statute creates a rebuttable presumption that 'the amount of child support which would result from the application of the child support guidelines is the correct amount of child support.' NDCC § 14–09–09.-7(3). After the promulgation of child support guidelines pursuant to this section, determinations of child support are made by applying the calculations required by the regulations, and these calculations result in an amount of child support which is presumptively correct. *See* chapter 75–02–04.1, North Dakota Administrative Code. 'The presumption may be rebutted if a preponderance of the evidence in a contested matter establishes that factors not considered by the guidelines will result in an undue hardship to the obligor or a child for whom support is sought. A written finding or a specific finding on the record must be made if the court determines that the presumption has been rebutted.' NDCC § 14–09–09.7(3).

\*     \*     \*     \*     \*     \*

"In order to set a support amount lower than that provided by the schedule, a trial court must make findings of obligor-hardship consistent with section 14–09–09.7(3), NDCC."

Patty contends that if the child support guideline formula is applied, Mylene has an average monthly net income of $2,495.67 and that, under the guideline schedule, his support obligation for Vicki and Anthony is $723 per month. The district court awarded child support to Patty of "$150 for each child, to be increased to $250 as each becomes age 13." The court's only explanation of why it departed from the support amounts recommended by the guidelines is "the fluctuating income of [Mylene] in the farming operation." This explanation is inadequate.

The guidelines expressly provide a method for calculating the appropriate child sup-

port amount when the obligor is engaged in farming and there is significant fluctuation in yearly income:

North Dakota Administrative Code Section 75–02–04.1–05. Determination of net income from self-employment.

"3. Farm businesses experience significant changes in production and income over time. To the extent that information is reasonably available, the average of the most recent five years of farm operations, undertaken on a scale substantially similar to farm operations of a party to the child support proceeding, should be used to determine farm income."

The guidelines also provide that tax deductions for expenses not requiring actual payments, such as depreciation, must be added to the obligor's net income amount:

North Dakota Administrative Code Section 75–02–04.1–05. Determination of net income from self-employment.

"2. After adjusted gross income from self-employment is determined, all business expenses which may be allowed for taxation purposes, but which do not require actual expenditures, such as depreciation and net operating losses, must be added to determine net income from self-employment. Business costs which are actually incurred and paid, but which may not be expensed for internal revenue service purposes, such as principal payments on business loans, may be deducted to determine net income from self-employment."

■ Assuming that Patty has correctly computed Mylene's support obligation using the guideline formula, the $723 monthly support payment would presumptively be a correct support award. That presumptive support obligation is rebuttable under Section 14–09–09.7(3), N.D.C.C., only with a specific written finding by the court that the preponderance of the evidence establishes that factors not considered by the guidelines would result in an undue hardship for Mylene to pay that amount. The district court neither calculated the support obligation in accordance with the guidelines nor made a finding that the presumptive obligation resulting from that calculation was rebutted by appropriate evidence. Therefore, we conclude that the district court's child support award is clearly erroneous and that the court must redetermine Mylene's child support obligation.

The judgment is affirmed in part, reversed in part, and remanded for a redetermination on the issue of child support.

DOUGLAS B. HEEN, Surrogate Judge, WALLACE D. BERNING, and JOHN T. PAULSON, District Judges, concur.