2001 ND 124

**Deborah Lee HOVERSON, Plaintiff and Appellee**

v.

**Carl Michael HOVERSON, Defendant and Appellant.**

**No. 20000227.**

Supreme Court of North Dakota.

July 10, 2001.

Alan M. McDonagh and Ralph F. Carter of Moosbrugger, Carter & McDonagh, P.L.L.P., Grand Forks, for defendant and appellant; submitted on brief.

Patti Jo Jensen of Galstad, Jensen & McCann, PA, East Grand Forks, MN, for plaintiff and appellee; submitted on brief.

NEUMANN, Justice.

[¶ 1] Carl Hoverson appeals from the trial court's judgment, arguing the trial court clearly erred in valuing and distributing the parties' property, in awarding Deborah spousal support, and in calculating Carl's child support obligation. We affirm in part, reverse in part, and remand.

I

[¶ 2] Deborah and Carl Hoverson married in 1977. They have five children, ages 23, 21, 19, 17, and 11. During the early years of their marriage, Carl farmed and Deborah was a homemaker and bookkeeper for the farm.

[¶ 3] In 1994, Carl established a potato farming partnership, Hoverson Farms, LLP, with Ron Offutt. Deborah did not approve of the formation of the partnership, nor was she present at the meetings regarding the formation of the partnership. Each partner owned fifty percent of the partnership, and each was required to provide an equal contribution of capital. Offutt contributed $896,000 in cash, and Carl contributed machinery valued at $896,000. The partnership built three potato warehouses. Because the partnership needed the equity from the warehouses for capital, it sold the warehouses and leased them from the buyer. In 1995, the partnership lost $955,000 because of bad weather, necessitating the partners, Carl and Offutt, to inject more capital into the partnership. In 1996, Carl signed an agreement personally guaranteeing $500,000 if the partnership needed more money. Offutt contributed an additional $500,000 in cash into the partnership. In 1997, the partnership's lender demanded the partners contribute additional capital. Carl contributed the parties' 404 shares of stock in American Crystal, valued at $747,400, and a 60–acre real estate lot the parties had purchased in 1996, valued at $60,000. Offutt made an equal cash contribution.

[¶ 4] The parties separated in March 1997. Deborah remained on the farm with the children. In May 1998, Carl bought a

home in Grand Forks. After the separation, Deborah obtained a part-time retail job until December 1999 when she began working for the Grand Forks Police Department. At the time of trial, Deborah was earning $8.39 per hour, without benefits.

[¶ 5] Deborah initiated this action on May 20, 1997, seeking a property distribution, an assignment of the debts and obligations, and child support. At trial, the parties agreed to the value of much of their property. The parties disagreed significantly about the value of the partnership, including the value of the leases on the potato warehouses and the value of the equipment. Each party presented expert testimony. Carl's expert, Tyler R. Falk, the partnership's chief financial officer, testified the partnership had a negative value. Deborah's expert, Ronald K. Bleth, an independent accountant, testified the partnership value was $1,888,000.

[¶ 6] After trial, on June 8, 2000, the trial court filed its findings of fact, conclusions of law, order for judgment, and judgment. The trial court found the partnership was an ongoing business with a net value of $1,049,295, and found Carl's share of the partnership was $524,648. The court found the total value of the parties' marital estate was $1,067,638, less debts totaling $245,453, resulting in a net marital estate of $822,185. The court found Carl committed economic fault by transferring the stock and real estate to the partnership without Deborah's knowledge or consent and contrary to a promise Carl made to Deborah that he would not transfer this property to the partnership. The court awarded Deborah a net property award of $352,630, and Carl a net property award of $469,540. In addition to the property award, the court awarded Deborah $117,000 in future cash payments to equalize the property division. The trial court

found Deborah was disadvantaged by the divorce and awarded her permanent spousal support of $500 per month, increasing to $1,000 per month after the youngest child is no longer entitled to child support. The court ordered Carl to pay $1,005 per month in child support. Carl appealed.

## II

[¶ 7] A trial court's findings of fact will not be reversed unless they are clearly erroneous. N.D.R.Civ.P. 52(a); *Mellum v. Mellum*, 2000 ND 47, ¶ 9, 607 N.W.2d 580. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has been made. *Id.* at ¶ 9.

[¶ 8] Section 14–05–24, N.D.C.C., governs a trial court's division of property and its determination of support obligations in a divorce proceeding. Under N.D.C.C. § 14–05–24:

When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively.

[¶ 9] Carl argues the trial court's determinations as to valuation and distribution of the parties' property, spousal support award, and child support award are clearly erroneous.

### III

[¶ 10] In challenging the trial court's property distribution, Carl argues the court erred in its valuation of the property, erred in finding Carl had committed economic misconduct, and erred in awarding Deborah future cash payments.

### A

[¶ 11] Carl argues the trial court clearly erred in valuing the partnership at $1,049,295. Carl asserts Deborah's expert confused fair market value and liquidation value, and the trial court erred by relying on the valuation of Deborah's expert.

[¶ 12] Ordinarily, fair market value is the proper method of valuing marital property in a divorce. *Peterson v. Peterson*, 1999 ND 191, ¶ 11, 600 N.W.2d 851. Fair market value is the price a buyer is willing to pay and a seller is willing to accept under circumstances that do not amount to coercion. *Heggen v. Heggen*, 452 N.W.2d 96, 99 (N.D.1990).

[¶ 13] A trial court's valuation of property is a finding of fact that is presumptively correct and subject to the clearly erroneous standard of review. *Peterson*, 1999 ND 191, ¶ 12, 600 N.W.2d 851. A trial court, having the opportunity to observe demeanor and credibility, is in a far better position than an appellate court in ascertaining the true facts regarding property value. *Id.* at ¶ 12. A marital property valuation within the range of the evidence is not clearly erroneous. *Id.* at ¶ 12. A choice between two permissible views of the evidence is not clearly erroneous if the trial court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations. *Fox v. Fox*, 626 N.W.2d 660, 2001 ND 88, ¶ 14.

[¶ 14] The trial court found "[t]he fair market value of the [partnership] must be determined with reference to the fact that the farm will not be liquidated" and is an ongoing business despite "the currently stressed finances of the enterprise." The court acknowledged the parties' disagreement concerning the valuation of the partnership and considered the testimony of each party's expert witness. The court primarily adopted the valuations of Deborah's expert, Ronald K. Bleth. Bleth testified about the fundamental difference between his opinion and the opinion of Carl's expert, Tyler R. Falk. Bleth testified:

> Based on the assets, the equipment and the warehouses, Mr. Falk values those by saying we're going to see this. That's the values we're going to use to liquidate. In a marital dissolution there is no sale. I look at the economic value of these assets to Hoverson Farms, for example there is a lot of irrigation equipment on leased land. If we're to look at a liquidating value, there is going to be very little value there. It will cost you as much to get out of the group if you can even afford to do that and yet that irrigation equipment has a value to Hoverson Farms as it's going on. Simplot wants its potatoes grown on irrigated farmland. Hoverson Farms wants to grow potatoes. Hoverson has to have irrigated land so they put in a hundred thousand dollars in irrigating other people's land. So Hoverson Farms as it continues that has a value. That has an economic value to the farm and it's not going to be liquidated. That's where Mr. Falk and I basically disagree.

During cross-examination of Bleth, the trial court clarified the basis for Bleth's valuation:

> THE COURT: Just to clarify, you're talking fair market value as a going concern?
>
> [BLETH]: Correct.

THE COURT: Not a liquidation value, correct?

[BLETH]: Correct.

[¶ 15] The record shows both parties' experts testified as to the value of the partnership and explained their valuations. The trial court's valuation was within the range of evidence, and we are not left with a definite and firm conviction a mistake has been made. Therefore, we cannot say the trial court's valuation is clearly erroneous.

B

[¶ 16] Carl argues the trial court clearly erred in finding he had committed economic misconduct by transferring the parties' stock and real estate to his farming partnership and erred in dividing the marital property accordingly.

[¶ 17] In a divorce, the trial court must distribute the marital property equitably between the parties. N.D.C.C. § 14–05–24. All of the parties' assets, regardless of the source, must be considered to ensure an equitable distribution of the marital property. *Kautzman v. Kautzman*, 1998 ND 192, ¶ 10, 585 N.W.2d 561. An equitable distribution does not necessarily mean an equal distribution, but a substantial disparity must be explained. *Young v. Young*, 1998 ND 83, ¶ 11, 578 N.W.2d 111. In determining an equitable distribution under N.D.C.C. § 14–05–24, the trial court applies the guidelines established under *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107, 111 (1952) and *Fischer v. Fischer*, 139 N.W.2d 845, 852 (N.D.1966). The *Ruff–Fischer* guidelines allow the trial court to consider certain factors, including the conduct of each party during the marriage. *Johnson v. Johnson*, 2000 ND 170, ¶ 44, 617 N.W.2d 97. Fault of a party is conduct to be considered under the *Ruff–Fischer* guidelines. *E.g., Rust v. Rust*, 321 N.W.2d 504, 506–07 (N.D.1982). Economic

misconduct, also referred to as financial misconduct or economic fault, is conduct the trial court may consider when applying the *Ruff–Fischer* guidelines. *Zacher v. Zacher*, 493 N.W.2d 704, 705 (N.D.Ct.App. 1992). This Court has long recognized that both economic and noneconomic fault are proper factors for the trial court to consider in dividing marital property. *Reiser v. Reiser*, 2001 ND 6, ¶ 12, 621 N.W.2d 348. The question before us is whether the trial court erred in finding Carl's conduct constituted economic misconduct.

[¶ 18] We have never clearly established the distinction between economic and noneconomic misconduct. However, we have found economic fault in a number of situations. In *Halvorson v. Halvorson*, 482 N.W.2d 869 (N.D.1992), we affirmed the trial court's finding of economic fault. In that case, Glenn Halvorson transferred cattle, machinery, and 40 acres of land to the parties' son without consideration, without his wife's consent, and against her desire to treat all of the children equally. *Halvorson*, 482 N.W.2d at 870–71. We affirmed the trial court's finding Glenn Halvorson's transfer of the property resulted in the dissipation of marital assets and constituted economic fault. *Id.*

[¶ 19] In *Peterson v. Peterson*, 1999 ND 191, 600 N.W.2d 851, we affirmed the trial court's finding Howard Peterson committed marital and economic misconduct by forging his wife's name to a check issued for the sale of their former home and depositing that check into his personal account. *Peterson*, 1999 ND 191, ¶ 4, 600 N.W.2d 851. In addition, he attempted to transfer assets to his children, without informing Mildred Peterson and against her wishes. *Id.* at ¶ 4. He violated a temporary restraining order prohibiting the disposal, encumbrance, or dissipation of assets by purchasing and selling homes,

lending money to his children, and encumbering property. *Id.* at ¶ 4. He failed to pay taxes on marital real property, he violated an interim order to pay spousal support, and he failed to timely produce documents requested by the trial court and opposing counsel for marital property valuation purposes. *Id.* at ¶ 4.

[¶ 20] In *Theis v. Theis*, 534 N.W.2d 26 (N.D.1995), we affirmed the trial court's finding Marion Theis engaged in reprehensible conduct constituting economic fault and awarding a significantly disparate award of property to her husband, John Theis. In that case, Marion Theis absconded with marital assets approximating $70,000. *Theis*, 534 N.W.2d at 27. She wrongfully endorsed a check payable to her husband, John Theis, for $9,360 and retained the proceeds. *Id.* She misappropriated money paid by her husband's insurer for medical treatment her husband received and kept the money rather than applying it to her husband's medical bills. *Id.* She spent marital assets on gifts for her boyfriend including a car, clothing, and jewelry, while her husband was undergoing cancer treatment. *Id.* Finally, she canceled her husband's health insurance provided by her employer in an effort to create financial havoc for her husband. *Id.*

[¶ 21] Carl and Deborah's testimony regarding whether Deborah knew of and consented to the transfer of the stock and the real estate to the partnership was conflicting. The trial court found Deborah was not aware of the transfer of the assets and found the transfer was contrary to a promise made between Carl and Deborah not to transfer the property to the partnership. A trial court's choice between two permissible views of conflicting evidence is not clearly erroneous. *Barth v. Barth*, 1999 ND 91, ¶ 13, 593 N.W.2d 359. The trial court appropriately weighed the credibility of the parties and found Deborah's testimony more credible.

[¶ 22] Carl asserts transferring the property was necessary to meet the parties' financial obligations and to succeed in the potato farming business. Carl cites *Linrud v. Linrud*, 552 N.W.2d 342 (N.D. 1996) for support. In *Linrud*, the marital estate involved ongoing business activities in which marital assets were regularly converted into other marital assets or applied to a reduction of marital debt. 552 N.W.2d at 345. In that case, we stated the mere conversion of an asset to another form does not necessarily mean the asset has been wasted or the net marital estate has been reduced. *Id.*

[¶ 23] A majority of this Court has never agreed that financial mismanagement, without more, constitutes economic fault. Spouses who are in business may have to make business decisions involving matters such as expansion and capital investment. We recognize spouses often disagree. We also recognize business decisions may result in losses. But, this case involves more than spousal disagreement and business losses. Carl and Deborah specifically agreed not to transfer certain marital assets to the partnership. In spite of that specific promise, and without Deborah's knowledge or consent, Carl transferred the assets to the partnership.

[¶ 24] Economic misconduct is misconduct that results in a wasted asset or in the reduction of the net marital estate. The record does not show Carl's misconduct necessarily resulted in the waste of the assets or in a reduction of the net marital estate. Absent this evidence, the elements of economic misconduct have not been met. Thus, the trial court erred in concluding Carl's transfer of the assets constituted economic misconduct.

## C

[¶ 25] Carl argues the trial court clearly erred in awarding Deborah $117,000 in future cash payments.

[¶ 26] The trial court awarded Deborah property with a net value of $352,630 and awarded Carl property with a net value of $469,540. Thus, a $116,910 disparity existed between the net property awarded to the parties. In addition to the property award, the court awarded Deborah future cash payments, concluding:

> [Deborah] is awarded $117,000 in future payments of cash as set forth herein to equalize the property award, together with a further sum in cash of $113,000 which represents one-half of the present value of the sugar beet stock and the Larimore land transferred by [Carl] to Hoverson Farms LLP (total of $460,000 ÷ 2 = $230,000) without the knowledge or consent of [Deborah], less the $117,000 awarded to equalize the property division. This additional award for economic waste eliminates a double recovery for [Deborah] by taking into consideration the value of those items already being included in the valuation of the partnership, and reducing the award for economic waste by the amount attributable to valuation of the partnership. The valuation of the partnership by the Court has resulted in the cash payment of $117,000 from [Carl] to [Deborah] to equalize the division of property. [Deborah] shall have a money judgment against [Carl] for the sum of $230,000, payable as follows: $30,000 in principal each year, commencing February 15, 2001, together with interest on the principal balance at the rate of 5% per annum. The eighth and final payment shall be $20,000 together with interest on the outstanding principal balance.

[¶ 27] A trial court's findings of fact and conclusions of law should reflect the basis of the court's decision. *See Emter v. Emter*, 1999 ND 102, ¶ 8, 595 N.W.2d 16. A factual basis is necessary for a reviewing court to understand whether a trial court's distribution of marital property is clearly erroneous. *Id.* at ¶ 8. We will remand for clarification if we cannot discern the rationale for the trial court's decision through inference or deduction. *Id.* at ¶ 8. When we are unable to ascertain the basis for the court's conclusions of law and decision, we cannot properly perform our appellate court function. *Id.* at ¶ 8.

[¶ 28] The trial court's rationale does not support its property award calculations. Although the trial court stated it awarded Deborah the future cash payments to equalize the property award, the $117,000 in future cash payments merely reversed the amounts awarded to the parties. To equalize the property award, the trial court would have had to award Deborah half the difference between the amounts awarded the parties, or half of $116, 910, which is $58,455. Also, while the trial court may have intended to attribute the additional $113,000 to the transferred property, the court's basis for its figures eludes us. The trial court stated it intended to eliminate double recovery. But in essence, Deborah is receiving double recovery. The valuation of the partnership includes the value of the transferred property to the partnership. Because half the value of the partnership is included in the marital estate, half the value of the transferred property is also already included in the marital estate. If the court had correctly equalized the property awards, as evidently intended, Deborah would have received the value of one-quarter of the transferred property by receiving half the marital estate; to award

Deborah half the value of the transferred assets without double recovery, as the court stated, the court would have used a cap of $115,000, which represents one-quarter of the value of the transferred assets. Thus, the court would have awarded $58,455 to equalize the property awards and an additional $56,545. On remand, the court is free to amend its distribution of property, or to clarify its intended distribution. In either event, the trial court must give sufficient explanation to permit a reviewing court to determine the basis for its distribution.

[¶ 29] We remand for a recomputation or clarification of the distribution of the marital property. On remand the trial court may, if it deems it necessary, receive additional argument or evidence.

## IV

[¶ 30] Carl argues the trial court clearly erred in awarding Deborah permanent spousal support.

[¶ 31] Upon granting a divorce, a trial court may compel either party to make such suitable allowances to the other for support as the court may deem just. N.D.C.C. § 14–05–24; *Marschner v. Marschner*, 2001 ND 4, ¶ 10, 621 N.W.2d 339. In determining whether spousal support should be awarded, the trial court should apply the *Ruff–Fischer* guidelines. *Johnson v. Johnson*, 2000 ND 170, ¶ 49, 617 N.W.2d 97. To award spousal support, the trial court must find the requesting spouse is disadvantaged. *Id.* at ¶ 49. A disadvantaged spouse is one who has foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse's increased earning capacity. *Id.* at ¶ 49. Any spouse who remains at home, out of the workforce, in order to maintain a marital residence and act as a homemaker has foregone opportu-

nities and has lost advantages that accrue from work experience and employment history. *Weigel v. Weigel*, 2000 ND 16, ¶ 13, 604 N.W.2d 462. A valid consideration in awarding spousal support is balancing the burden created by the divorce. *Marschner*, 2001 ND 4, ¶ 10, 621 N.W.2d 339.

[¶ 32] The court found that Deborah "is economically disadvantaged by the divorce and the financial dealings of the defendant in transferring property without her knowledge or consent to the partnership." The court found Deborah earns $8.39 per hour, while Carl earns $36,000 annually; Deborah is 40 years of age, has a high school education, and has devoted herself to the farm and family, while Carl is 44 years of age, has some college credits beyond his high school education, and has considerable experience in farm operation and management; Deborah has bookkeeping experience from working at the farm in the bookkeeping and office area, is not likely to be able to rehabilitate her earning capacity to any great degree, and her present income will likely not increase significantly.

[¶ 33] The record supports the trial court's finding that Deborah is disadvantaged by the divorce, and we are not left with a definite and firm conviction a mistake has been made. The trial court did not clearly err in awarding Deborah permanent spousal support.

## V

[¶ 34] Carl argues the trial court clearly erred in awarding Deborah $1,005 per month in child support for the parties' minor children.

[¶ 35] In determining child support under the guidelines established by the North Dakota Department of Human Services, a court must first calculate

an obligor's gross income. N.D. Admin. Code § 75–02–04.1–01(5); *Richter v. Houser*, 1999 ND 147, ¶ 4, 598 N.W.2d 193. Gross income means income from any source, in any form. N.D. Admin. Code § 75–02–04.1–01(5). The obligor's net income is then used to compute the support obligation. N.D. Admin. Code § 75–02–04.1–10. A proper finding of net income is essential to determine the correct amount of child support under the child support guidelines. *Schiff v. Schiff*, 2000 ND 113, ¶ 31, 611 N.W.2d 191.

Net income is defined as gross annual income less:

a. A hypothetical federal income tax obligation based on the obligor's gross income, reduced by that part of the obligor's gross income that is not subject to income tax under the Internal Revenue Code, and applying:

  (1) The standard deduction for the tax filing status of single;

  (2) One exemption for the obligor;

  (3) One additional exemption for each child actually claimed on a disclosed income tax return or one additional exemption for each child, as defined in this section, if a tax return is not disclosed; and

  (4) Tax tables for a single individual for the most recent year published by the internal revenue service, reduced by one child tax credit for each child's exemption considered under paragraph 3;

b. A hypothetical state income tax obligation equal to fourteen percent of the amount determined under subdivision a without reduction for child tax credits[.]

N.D. Admin. Code § 75–02–04.1–01(7).

■ [¶ 36] In determining the amount to deduct for tax obligations, actual tax liabilities are not the proper measure for calculating net income for child support; rather, the proper measure is what the taxes would have been if the standard deductions and tax tables were used. *Schleicher v. Schleicher*, 551 N.W.2d 766, 769–70 (N.D.1996).

■ [¶ 37] The trial court found Carl's annual net income for child support purposes was $42,000, including $36,000 for managing the farm and $6,000 for the value of a vehicle provided to Carl by the partnership. Because of the large operating losses from the partnership, Carl does not pay taxes on his income. Thus, the trial court deemed it appropriate to consider the entire $42,000 in determining child support under the child support guidelines.

[¶ 38] The trial court failed to use a hypothetical federal income tax obligation in calculating child support. Instead, the trial court improperly used Carl's actual tax liability. We direct the trial court upon remand to recalculate Carl's net income based upon standard deductions and tax tables, as required by N.D. Admin. Code § 75–02–04.1–01(7)(a) and (b), and to recalculate his monthly child support obligation accordingly.

VI

[¶ 39] The trial court judgment is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

[¶ 40] VANDE WALLE, C.J., and MARING, KAPSNER and SANDSTROM, JJ., concur.