2002 ND 191

### In the Interest of F.R.S.

F.R.S., Karla R. Shane, the parent and natural guardian of F.R.S., and the Grand Forks County Social Service Board, Assignee for Karla R. Shane, Plaintiffs and Appellees,

v.

James D. Erickson, Defendant and Appellant.

No. 20020189.

Supreme Court of North Dakota.

Dec. 4, 2002.

Diane Marie Hausmann, Grand Forks, ND, for plaintiffs and appellees.

Sharon W. Martens, Hodny Currie Lawyers, Grafton, ND, for defendant and appellant.

MARING, Justice.

[¶ 1] James Erickson appealed from an amended judgment increasing his child support obligation for his daughter F.R.S. ("Francis," a pseudonym). We hold the district court's findings regarding Erickson's net income are not clearly erroneous and the court properly computed the support obligation in accordance with the child support guidelines. We affirm.

I

[¶ 2] Erickson was determined to be Francis's father and was ordered to pay child support of $250 per month to the child's mother, who is the custodial parent, in a judgment entered November 4, 1998. At the request of Francis's mother, the Grand Forks Regional Child Support Unit reviewed Erickson's income and filed a motion on April 12, 2002 requesting the district court to increase Erickson's child support obligation. After a hearing, the court found Erickson has a net income of $2,961 per month and entered an amended judgment increasing Erickson's child support obligation from $250 per month to $524 per month. Erickson appealed, asserting the trial court's findings regarding Erickson's net income for child support purposes are clearly erroneous and the court improperly applied the child support guidelines.

II

[¶ 3] We summarized our standard for reviewing child support determinations in *Minar v. Minar*, 2001 ND 74, ¶ 10, 625 N.W.2d 518:

Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. A court errs as a matter of law when it fails to comply with the requirements of the child support guidelines in determining an obligor's child support obligation. As a matter of law, the trial court must clearly set forth how it arrived at the amount of income and level of support. The trial court's findings of fact in making its child support determination are overturned on appeal only if they are clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made. Findings are adequate if we can understand from them the factual basis for the court's determination.

(Citations omitted.) Section 14–09–09.7(3), N.D.C.C., creates a rebuttable presumption that the amount of child support, as determined by application of the child support guidelines, is the correct amount of child support. *Geinert v. Geinert*, 2002 ND 135, ¶ 7, 649 N.W.2d 237. This presumption equally applies to motions to modify an original child support order. *Id.*

[¶ 4] A proper finding of net income is essential to a determination of the correct amount of child support under the guidelines. N.D. Admin. Code § 75–02–04.1–02(3) and (6); *Christl v. Swanson*, 2000 ND 74, ¶ 7, 609 N.W.2d 70. In its memorandum decision, the district court thoroughly explained its process and reasoning in computing Erickson's income for child support purposes:

[Erickson] is a self-employed farmer and custom harvester. He has been

doing both since at least 1992, but his operations have changed dramatically since 1999. In that year, he set up a subchapter "S" corporation for the custom harvesting business and continued to farm as well. The custom harvesting business was extended beyond North Dakota, to include Oklahoma, Kansas, Nebraska, and South Dakota. In 1999 and 2000, [Erickson] suffered business losses, for income tax purposes. . . .

[Erickson's] farming operation has been profitable over the period from 1996–2000. If only the farm income was considered, together with capital gains and other income, not including the losses incurred by the corporation in 1999 and 2000, [Erickson] would have an average income of approximately $46,865 per year during those years. However, that amount is considerably affected by a significant change in the farming operation in the year 2000. [Erickson] took over his father's farming operation and was running about 2,000 acres, rather tha[n] the 400 acres that he previously was farming before 2000. In 2000, farm income of $144,075 was reported. The Court is not able to determine whether this amount will be the same in years to come, but the evidence shows that [Erickson] will continue to farm at least 2,000 acres per year in the future.

Further complicating the determination of income is the fact that [Erickson] will not be operating the custom business on the same scale as the last two years. He will not make the southern trip and any custom harvesting will be done only in North Dakota. . . . The past is therefore not the best predictor of the future in this case. [Erickson's] income for the future will be determined on the results of the farming operation, together with any local custom work [Erickson] performs.

. . . .

[Erickson's] farming operation today is not on a substantially similar scale as before 2000, and there is no data reasonably available to determine what fluctuations will be experienced from the 2000 crop year. The data will not be available for a number of years. But the Court does have farm income data for 1996 through 2000. While it may not be comparable to what [Erickson] will make in the future with his expanded farming operation, farm income for the future would not be less than the average for the preceding five years, four years of which were at a time when he [was] farming only 400 acres. In setting child support, it is to [Erickson's] advantage to use the last five years of the farming operation (which also included the local custom work prior to 1999) to determine income. The custom harvesting work which generated the tax losses should not be considered at this time since that operation will not be carried on this year or in the foreseeable future.

The net income of [Erickson] is found to be $2,961 per month, resulting in a child support obligation of $524 per month, giving due consideration to the fact that [Erickson] has another child living with him in his household.

■ [¶ 5] Erickson argues the district court erred in determining his income because the court excluded from the calculation losses incurred by Erickson in his out-of-state custom harvesting operations in 1999 and 2000. The child support guideline particularly relevant to this determination is found under N.D. Admin. Code § 75–02–04.1–02(8):

Calculations made under this chapter are ordinarily based upon recent past circumstances because past circumstances are typically a reliable indicator of future circumstances, particularly cir-

cumstances concerning income. If circumstances that materially affect the child support obligation are very likely to change in the near future, consideration may be given to the likely future circumstances.

Also relevant is N.D. Admin. Code § 75–02–04.1–05(5):

Businesses may experience significant changes in production and income over time. To the extent that information is reasonably available, the average of the most recent five years of business operations, if undertaken on a substantially similar scale, must be used to determine business income.

The trial court specifically found that Erickson will not be operating his custom business on the same scale in the future, because Erickson will no longer be doing out-of-state harvesting. On this issue, Erickson testified:

Q. I was wanting to clarify one thing. Ms. Hausmann asked you if you went—if you planned your out of state harvest in 2002 and you answered yes; is that correct?

A. I don't plan to go out of state.

Q. You plan to end that operation?

A. Yes.

[¶ 6] It is inherently inconsistent and unfair to, on the one hand, include income from a business under N.D. Admin. Code § 75–02–04.1–05(5) and, on the other hand, reject losses from that same business under N.D. Admin. Code § 75–02–04.1–02(8) on the basis the losses "are very likely to change in the near future." If, however, the losses are very likely to change in the near future because of a cessation of the business, the income is also certain to change because of the cessation of that business. We conclude the trial court's finding that Erickson would not continue his out-of-state custom har-

vesting operations is supported by the evidence and is not clearly erroneous. In consideration of that fact, the court properly refused to include losses from the out-of-state custom harvesting for computing Erickson's income, because those past losses would not be "the best predictor" of Erickson's future income. The guidelines specifically authorize the court to take such circumstances into consideration when self-employed operations in the future will not be "on a substantially similar scale" and when "circumstances that materially affect the child support obligation are very likely to change in the near future."

[¶ 7] Erickson also argues the trial court erred in computing his income, because the court improperly included gains Erickson realized from the out-of-state custom harvesting operations during 1997 and 1998. He claims it is unfair to include those gains while excluding the 1999 and 2000 losses from the out-of-state custom harvesting. Income must be documented through the use of tax returns, current wage statements, and other information sufficient to fully apprise the court of all gross income. N.D. Admin. Code § 75–02–04.1–02(7). Where gross income is subject to fluctuation, particularly in instances involving self-employment, information reflecting and covering a period of time sufficient to reveal the likely extent of fluctuations must be provided. *Id.* On appeal, a party cannot take advantage of his failure to provide such information by predicating error upon rulings made to the best of the trial court's ability in the absence of the relevant information. *See Anderson v. Anderson*, 504 N.W.2d 569, 571 (N.D.1993). We conclude Erickson cannot predicate error on the ground the trial court failed to exclude gains in 1997 and 1998 from the out-of-state custom harvesting operations, because Erickson failed

to provide the court necessary information to determine those gains, if any.

[¶ 8] Erickson submitted his tax returns for 1997 and 1998, including Schedule F showing profit or loss from his farming operations. In both 1997 and 1998 Erickson reported a net loss from farming operations on Schedule F. However, Erickson did not separate on Schedule F the income and expenses of the out-of-state custom harvesting operation from the income and expenses of the local custom harvesting operation. Consequently, the court did not have evidence before it from which it could determine whether Erickson's out-of-state custom harvesting operations incurred gains or losses in 1997 and 1998. Under these circumstances, we conclude the trial court did not abuse its discretion in utilizing Erickson's income, as reported on his 1997 and 1998 tax returns, without excluding gains which may have been attributable to Erickson's out-of-state custom harvesting.

### III

[¶ 9] We conclude the trial court's findings regarding Erickson's net income, for purposes of computing Erickson's child support obligation, are not clearly erroneous. We also conclude the trial court did not err in refusing to consider past losses from the out-of-state custom harvesting, because those losses are not accurate predictors of Erickson's future income. We, therefore, hold the trial court properly computed Erickson's child support obligation under the guidelines, and we affirm.

[¶ 10] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.