2007 ND 194

**Shelly EVENSON, Plaintiff and Appellant**

v.

**John T. EVENSON, Defendant and Appellee.**

**No. 20060148.**

Supreme Court of North Dakota.

Dec. 13, 2007.

Neil W. Fleming (argued) and Lawrence D. DuBois (on brief), Fleming, DuBois & Fleming, P.L.L.P., Cavalier, N.D., for plaintiff and appellant.

Alan M. McDonagh, Carter McDonagh, P.L.L.P., Grand Forks, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1] Shelly Rae Evenson appeals from an amended judgment granting her a divorce from John T. Evenson, dividing their marital property, setting his child support obligation, granting her spousal support, and awarding neither party attorney fees. Shelly Evenson also appeals from an order denying her motion for a new trial and for relief from the judgment. We conclude the district court's findings on the value of the marital property and John Evenson's child support and spousal support obligations are not clearly erroneous, and the court did not abuse its discretion in refusing to award Shelly Evenson attorney fees and in denying her post-trial motions. We affirm.

## I

[¶ 2] The parties were married in 1985. At the time of the marriage, Shelly Evenson had completed her education at St. Luke's School of Nursing and was working full-time as a registered nurse. John Evenson had one year of college left at North Dakota State University, where he completed school with a degree in education, concentrating in mathematics. After John Evenson graduated, the parties moved to Edinburg. John Evenson began working as a loan officer with Farm Credit Services, and the parties moved to Langdon. After the first of their four children was born, Shelly Evenson worked at hospitals in Langdon and Park River. The family eventually moved back to Edinburg. Throughout the marriage and birth of the other children, Shelly Evenson continued to work part-time as a registered nurse in the area. John Evenson eventually left his job at Farm Credit Services and worked as a loan officer and insurance agent for area banks.

[¶ 3] In January 2000, John Evenson quit his employment as a bank loan officer and opened his own multi-peril crop insurance agency, Tri–County Insurance, which he operated as a sole proprietorship. He sold insurance to many of his former clients from the area banks where he had been employed. He also accepted employment with Cenex Harvest States performing accounting and collection services for the company. Shelly Evenson began doing administrative work for the insurance agency from its inception, and by 2001, she was working full-time at the agency. By 2002, she had also become a licensed multi-peril crop insurance agent. John Evenson continued working at Cenex Harvest States until March 2004, when his position was "discontinued."

[¶ 4] Shelly Evenson brought this divorce action in August 2003. The parties stipulated that Shelly Evenson would have physical custody of the three children who were still minors. Following the trial, the district court found the net value of the parties' marital estate to be $284,211.44, which was subsequently amended to $277,211.44. The court awarded Shelly Evenson approximately 52 percent of the net marital property, including the parties' newly-completed home. The court awarded John Evenson approximately 48 percent of the net marital estate, including the Tri–County Insurance business. Shelly Evenson was awarded most of the parties' liquid assets, including a $67,550 cash distribution from John Evenson payable in $15,000 annual installments with interest. The court ordered John Evenson to pay $1,809 per month for child support and awarded Shelly Evenson $700 per month in spousal support for four years and $400 per month for an additional two-year period. The court further ordered the parties to pay their own attorney fees. Shelly Evenson moved to amend the findings of fact, and the court denied the motion in part and granted the motion in part. Shelly Evenson subsequently moved for a new trial and for relief from the judgment under N.D.R.Civ.P. 59 and 60, but the court denied the motion.

## II

[¶ 5] Shelly Evenson argues the district court erred in valuing the crop insurance business, Tri–County Insurance, at $135,000.

[¶ 6] In *Olson v. Olson*, 2002 ND 30, ¶ 7, 639 N.W.2d 701, this Court said:

> The value a trial court places on marital property depends on the evidence presented by the parties. *See Fox v. Fox*, 2001 ND 88, ¶ 22, 626 N.W.2d 660. Because a trial court is in a far better position than an appellate court to observe demeanor and credibil-

ity of witnesses, we presume a trial court's property valuations are correct. *See Hoverson v. Hoverson,* 2001 ND 124, ¶ 13, 629 N.W.2d 573. We will not reverse a trial court's findings on valuation and division of marital property unless they are clearly erroneous. *See Corbett v. Corbett,* 2001 ND 113, ¶ 12, 628 N.W.2d 312. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has been made." *Kautzman v. Kautzman,* 1998 ND 192, ¶ 8, 585 N.W.2d 561. "A choice between two permissible views of the evidence is not clearly erroneous if the trial court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations." *Hoverson,* at ¶ 13. Marital property valuations within the range of evidence presented to the trial court are not clearly erroneous. *See id.; Fox,* at ¶ 19; *Wald v. Wald,* 556 N.W.2d 291, 295 (N.D.1996).

Ordinarily, the proper method of valuing marital property in a divorce is the fair market value as of the date of trial. *See Hoverson v. Hoverson,* 2001 ND 124, ¶ 12, 629 N.W.2d 573; *Barth v. Barth,* 1999 ND 91, ¶ 8, 593 N.W.2d 359. Business property need not be liquidated for a distribution to be equitable. *Holden v. Holden,* 2007 ND 29, ¶ 14, 728 N.W.2d 312. "It is not usually wrong for a trial court to accept the valuations submitted by one spouse over the other's, or to weigh one spouse's value testimony more heavily." *Braun v. Braun,* 532 N.W.2d 367, 370 (N.D.1995).

█ [¶ 7] The parties' expert witnesses agreed that the most common method of determining the fair market value of an insurance business is to apply a multiplier to the total amount of the agen-cy's gross commissions over a period of time. The witnesses testified relevant factors for computing the value included the loss ratios on the policies sold, the volume of business, the retention of business, and the company reinsurance agreements which established the commission rates. The district court found the gross premiums for Tri–County Insurance were $114,315 with a 229.19 percent loss ratio for 2000; $144,759 with a 146.08 percent loss ratio for 2001; $179,427 with a loss ratio of 168.34 percent for 2002; $174,883 with a loss ratio of 135 percent for 2003; and $130,488.40 with a loss ratio of 181 percent for 2004.

[¶ 8] Shelly Evenson asserted at trial that the value of the business should be determined by taking a three-year average of gross commissions from 2001 through 2003 and applying a multiplier of 1.75, resulting in a value of $296,674.47. Her expert witness, Timothy L. Dvorak, testified a multiplier of 1.5 would be "reasonable" under current circumstances, and that a multiplier of 1.75 would be "the upper range today." John Evenson proposed in his property and debt listing that the court average the gross commissions during the first four years of the business and apply a multiplier of 1.0, resulting in a value of $146,666.06. The district court, however, found averaging annual gross commissions "will not serve the purpose of fairly valuing the business at the time of trial." Rather than adopting one of the values proposed by the parties, the court applied the gross commissions for the most recent year of business, 2004, to a multiplier of 1.0 and found the value of Tri–County Insurance to be $135,000.

[¶ 9] Shelly Evenson argues the district court erred in its valuation of the business because neither party proposed basing the value on only the gross commissions from 2004. She further asserts

those figures are suspect because the parties were separated during 2004. There is, however, support in the record for the court's valuation.

[¶ 10] Shelly Evenson's expert witness, Dvorak, testified that "current conditions" of the past year were a factor in valuating an insurance business. He testified "we use an average or also, a single year. And generally go by current conditions. With a little bit of speculation in the future." The court also rejected the suggestion that John Evenson had intentionally decreased Tri–County Insurance's income in 2004. The court found that John Evenson had lost numerous clients between 2003 and 2004 based on circumstances beyond his control and there was little likelihood they would be replaced by new clients from the area. The court decided to use a multiplier of 1.0 based on the agency's "steady decrease in commission rates" caused by the high loss ratios suffered in the previous years and found "this pattern of decreased commission rates will continue." The court reasoned:

North Dakota has experienced high loss ratios exceeding premium rates over the past recent years. In this state those loss ratios are more severe north of Highway Two. They are even more severe in the locality of the farm operations of the clients of Tri–County Insurance Agency. Those loss ratios are consistent with the wet weather conditions testified to by different witnesses. This testimony does not favor a higher value for this agency.

[¶ 11] Furthermore, the court specifically found unpersuasive Dvorak's proposed multipliers of 1.5 or 1.75 because "his agency's use of a 1.75 multiplier for the purchase of another area agency was four years ago, when the crop insurance business environment was far more positive." The court found persuasive the testimony of Curt Christofferson, regional manager for NAU Country Insurance Company, who believed, under the current circumstances, a multiplier of 1.0 would be the most appropriate. The court concluded:

Considering all of the above, this court finds that a multiplier of *one* is the most appropriate figure to use as the primary basis to calculate the agency's fair market value at the time of trial. For reasons already noted, the use of multiple years in reaching an average of annual commissions is not appropriate. Certainly there are some factors that would support the use of an average. Crop values fluctuate year to year. Loss ratios fluctuate year to year. Individual clients tend to increase coverages. By the same token, commission rates have been decreasing for this agency directly related to the continued high crop loss ratios. Ultimately this court is satisfied that at the time of trial the agency has a value of at least $130,884.00. It is also of the conclusion that just as the agency lost some clients in 2004, that for some of those reasons he may also gain clients from another agency this year or the next. That is a fluctuation that causes this court to at least note the higher income John received in 2003 and 2002. Finally, the agency's reputation and that of its primary agent, John Evenson is high. He is well regarded by his peers with his knowledge and administration of the agency. Considering all of the factors above, including the use of *one* as a multiplier, this court is of the conclusion that an appropriate fair market value to place on the agency is $135,000.00.

[¶ 12] We are not left with a definite and firm conviction that the district court made a mistake in valuing Tri–County Insurance at $135,000. We conclude the valuation is within the range of the evidence presented and is not clearly erroneous.

## III

[¶ 13] Shelly Evenson argues the district court erred in distributing the marital property because it failed to consider John Evenson's savings account as part of the marital estate or require him to explain the depletion of the account assets.

[¶ 14] The savings account had an ending balance of $61.69 as of December 30, 2004. Shelly Evenson claimed the account should have contained between $36,000 and $81,000. John Evenson testified it had been his practice to place Tri–County Insurance proceeds into his business account, and then transfer those funds into his personal savings account. He testified the funds in his savings account were used to pay business expenses as well as interim child and spousal support, mortgage payments, insurance, real estate taxes, lines of credit, and legal fees. He presented general account ledgers establishing how the funds were spent and transferred to an account that was treated as part of the marital estate. Shelly Evenson's argument that the court failed to consider this account is without merit.

## IV

[¶ 15] Shelly Evenson argues the district court miscalculated John Evenson's child support obligation because it failed to include income he had earned from Cenex Harvest States.

[¶ 16] Child support determinations involve questions of law subject to a de novo standard of review, findings of fact subject to a clearly erroneous standard of review, and may include matters of discretion subject to an abuse of discretion standard of review. *Marchus v. Marchus,* 2006 ND 81, ¶ 6, 712 N.W.2d 636.

[¶ 17] The district court used a four-year average to compute John Evenson's annual self-employment income at $90,382.75. *See* N.D. Admin. Code § 75–02–04.1–05(4) (although usually requiring a five-year average for self-employment activity, a shorter period may be used "[w]hen self-employment activity has not been operated on a substantially similar scale for five years"). The court also included his interest income to arrive at a gross annual income of $90,787.75.

[¶ 18] From 2000 through March 2004, John Evenson also received wage income from Cenex Harvest States where he worked in accounting and collection. The court refused to include this income for child support purposes based on N.D. Admin. Code § 75–02–04.1–02(8), which provides in part: "If circumstances that materially affect the child support obligation are very likely to change in the near future, consideration may be given to the likely future circumstances." The court found that the Cenex Harvest States job was a temporary position that had been eliminated in March 2004 and the income from that position would no longer be available to John Evenson. The court found elimination of the job "materially effects [sic] the child support obligation" and John Evenson's past income from that position "should not be considered for any future circumstances relating to child support." *Compare In re F.R.S.,* 2002 ND 191, ¶ 6, 653 N.W.2d 659 (court's finding that obligor would not continue his out-of-state custom harvesting operations was not clearly erroneous and court properly refused to include losses from the out-of-state custom harvesting for computing income because those past losses were not the best predictor of his future income).

[¶ 19] We conclude the district court's finding that the Cenex Harvest States job was only a temporary position that had been eliminated is not clearly erroneous, and the court did not err in failing to include that income in computing John Evenson's child support obligation.

## V

[¶ 20] Shelly Evenson argues the district court erred in awarding her spousal support of $700 per month for four years and $400 per month for an additional two-year period.

[¶ 21] A spousal support determination, including the amount and the duration, is a finding of fact which will not be reversed on appeal unless it is clearly erroneous. *Wagner v. Wagner*, 2007 ND 33, ¶ 5, 728 N.W.2d 318; *Beals v. Beals*, 517 N.W.2d 413, 416 (N.D.1994); *LaVoi v. LaVoi*, 505 N.W.2d 384, 385 (N.D.1993). Any spousal award is to be based on consideration of the *Ruff–Fischer* guidelines weighing:

> the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and ˀecessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Sack v. Sack*, 2006 ND 57, ¶ 11, 711 N.W.2d 157 (quoting *Staley v. Staley*, 2004 ND 195, ¶ 8, 6ˀˀ N.W.2d 182).

[¶ 22] During trial, Shelly Evenson requested a spousal support award of $700 per month for seven years. The district court found that the monthly expenses claimed by the parties were "excessive in light of the limited funds that will be available . . . to provide for them." The district court recognized the limited amount of Shelly Evenson's income at this time, but further found that, after deducting net monthly expenses from net monthly income, John Evenson would have $2,900 per month remaining to pay his obligations under the divorce judgment. These obligations included his $1,809 monthly child support obligation, his $700 per month spousal support obligation, and his $15,000 annual cash distribution to Shelly Evenson. In setting the amount and duration of support, the court specifically referenced its findings regarding the valuation of Tri–County Insurance. Those findings indicate that John Evenson's income from his crop insurance business will more likely decrease than increase in the future.

[¶ 23] Given Shelly Evenson's request for $700 per month for seven years and the court's award of that amount for four years followed by $400 per month for two years, and considering the court's concern over the continued vitality of John Evenson's crop insurance business, we cannot say on this record the amount and duration of the spousal support award is clearly erroneous. If circumstances change and Tri–County Insurance's business flourishes in the future, Shelly Evenson may move to modify the spousal support provisions of the divorce judgment. *See Beals*, 517 N.W.2d at 416.

## VI

[¶ 24] Shelly Evenson argues the district court erred in failing to award her attorney fees in this case.

[¶ 25] Under N.D.C.C. § 14–05–23, a district court in divorce proceedings has discretion to award attorney fees based on one spouse's need and the other's ability to pay, and the court's decision on the matter will not be reversed on appeal unless the court abused its discretion. *Jelsing v. Peterson*, 2007 ND 41, ¶ 22, 729 N.W.2d 157. In making its decision, the court should consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the actions of either party have increased the time spent on the case. *Dvorak v. Dvorak*, 2006 ND 171, ¶ 24, 719

N.W.2d 362. A court abuses its discretion when it misinterprets or misapplies the law. *Wagner v. Wagner*, 2007 ND 101, ¶ 22, 733 N.W.2d 593.

[¶ 26] The parties have incurred substantial attorney fees in this divorce action. Each has had more than one attorney represent them in the proceedings. The court noted that John Evenson has paid more than $21,000 for his attorney fees and continues to owe about $14,750. He also paid almost $8,000 in custody investigator fees and had previously paid $6,000 of Shelly Evenson's attorney fees. Shelly Evenson still owes about $31,250 for her attorney fees. The court ordered the parties to pay their own attorney fees because: (1) both parties were at fault through their conduct for the high fees; (2) Shelly Evenson was awarded more liquid assets and a cash distribution; and (3) John Evenson could not afford to pay her attorney fees in view of his other obligations under the divorce judgment.

[¶ 27] The district court considered the appropriate factors under the law. We conclude the court did not abuse its discretion in refusing to award Shelly Evenson her attorney fees in this case.

### VII

[¶ 28] Shelly Evenson argues the district court erred in denying her motion for a new trial under N.D.R.Civ.P. 59(b)(4) and for relief from the judgment under N.D.R.Civ.P. 60(b)(ii) based on newly discovered evidence of John Evenson's 2004 tax return. She contends use of the tax return would have increased John Evenson's child support obligation and the valuation of Tri–County Insurance.

[¶ 29] Although the district court ruled the motion was untimely, the court also addressed the merits and concluded the tax return did not constitute newly discovered evidence. It is unnecessary to decide whether the motion was timely because,

even if it was, we conclude the court did not err in denying the motion on the merits.

[¶ 30] In *Johnson v. Johnson*, 2001 ND 109, ¶ 6, 627 N.W.2d 779, this Court stated:

> Under N.D.R.Civ.P. 59(b)(4), the court may vacate a decision and grant a new trial if there is newly discovered material evidence that the party, with reasonable diligence, could not have discovered and produced at the trial. Before a new trial is granted on the ground of newly discovered evidence, it must be shown: 1) the evidence was discovered following trial; 2) the movant must have exercised due diligence in discovering the evidence; 3) the evidence must not be merely cumulative or impeaching; 4) the evidence must be material and admissible; and 5) the evidence must be such that a new trial would probably produce a different result.

A district court's decision on a motion for new trial or for relief from the judgment on the basis of newly discovered evidence under N.D.R.Civ.P. 59(b)(4) and N.D.R.Civ.P. 60(b)(ii) will not be reversed on appeal unless the court abused its discretion. *Johnson*, at ¶ 6; *Bender v. Beverly Anne, Inc.*, 2002 ND 146, ¶ 18, 651 N.W.2d 642.

[¶ 31] Events occurring after trial do not qualify as newly discovered evidence to justify a new trial. *See Johnson*, 2001 ND 109, ¶ 7, 627 N.W.2d 779; *Porter v. Porter*, 274 N.W.2d 235, 242–43 (N.D.1979). Consequently, under either N.D.R.Civ.P. 59 or N.D.R.Civ.P. 60, evidence must have been in existence at the time of trial to constitute newly discovered evidence. *See* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 2859 (1995). The trial in this case occurred the last week of January 2005, and no 2004 tax return had been prepared at

that time. John Evenson testified he had not received all of his 1099 forms, and his certified public accountant who prepared his tax returns testified he had not received all of the information necessary to prepare the tax return.

[¶ 32] The district court noted the insurance companies that paid John Evenson income had until January 31 to issue 1099 forms, and because the parties were aware the 2004 tax return was not available, they attempted to reconstruct his income for the year from other exhibits during the trial. In concluding the "2004 tax return as an evidentiary exhibit is a post trial document, and because it did not exist at the time of trial it does not fall under the category of newly discovered evidence," the district court said:

> [John Evenson] correctly notes that neither [Shelly Evenson] nor her attorney made any objection to the lack of availability of the 2004 income tax return, and made no request that the record remain open to allow its introduction and consideration. There was no order sought compelling [John Evenson] to complete and tender the 2004 income tax return. Rather, both litigants accepted the fact that the return was not available and would not be available, and therefore proceeded accordingly. Under the totality of circumstances this was reasonable and this court does not fault [Shelly Evenson] in this regard. A litigation's timeline for evidence can never be so exact. Because the child support guidelines for calculating child support directed that the tax returns be the foundational basis for calculating in-

come, that was the method used by this court as it relates to child support calculations. [Shelly Evenson's] remedy is to seek a modification of her child support for years subsequent to that following the entry of the amended judgment and decree pursuant to N.D.C.C. 14–09–08.9.

Regarding the tax return's possible effect on the valuation of Tri–County Insurance, the court noted Shelly Evenson was attempting to change the theory of her case in the treatment of commissions by using a "cash method" rather than the "accrual method" the parties had agreed upon at trial. A new trial will not be granted to enable the movant to present her case under a different theory than she adopted at trial. *Rummel v. Rummel*, 234 N.W.2d 848, 853 (N.D.1975).

[¶ 33] We conclude the district court did not abuse its discretion in denying Shelly Evenson's post-trial motion.

## VIII

[¶ 34] We have considered the other arguments presented and conclude they do not affect our decision. The amended judgment and order denying Shelly Evenson's post-trial motion are affirmed.

[¶ 35] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, and DANIEL J. CROTHERS, JJ., concur.

DALE V. SANDSTROM, concurs in the result.